IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHARLES LAMONT NORWOOD,

                                                              ORDER

             Petitioner,

    v.                                                     08-cv-446-bbc

DON STRAHOTA, Security Director,
SERGEANTS HILBERT and PHILLIPS,
WARDEN MIKE THURMER,
CAPT. O'DONOVAN,
JAMES MUENCHOW, ICE,
MICHAEL MEISNER, ICE,
THERESA MURPHY, ICE,

             Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     Petitioner Charles Norwood is a prisoner at the Waupun Correctional Institution in Waupun, Wisconsin. He has struck out under 28 U.S.C. § 1915(g), which means that he cannot obtain indigent status under § 1915 in any future suit he files during the period of his incarceration unless his complaint alleges facts from which an inference may be drawn that he is in imminent danger of serious physical injury. In this case, petitioner argues that he should not be required to prepay the $350 fee for filing this action because his complaint qualifies for the exception to the three strikes bar. I agree.

1

> 28 U.S.C. § 1915(g) states,
>
> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

On three or more prior occasions, petitioner Norwood has filed lawsuits in this court that were dismissed as legally frivolous of for failure to state a claim upon which relief may be granted. See Norwood v. Hamblin, 04-C-318-C, decided Nov. 24, 2004, Norwood v. Hamblin, 04-C-846-C, also decided Nov. 24, 2004; and Norwood v. Hamblin, 04-C-854-C, decided Dec. 2, 2004. Thus, he must prepay the filing fee for this lawsuit unless his complaint alleges that he is in imminent danger of serious physical injury.

In order to meet the imminent danger requirement of 28 U.S.C. § 1915(g), a petitioner must allege a physical injury that is imminent or occurring at the time the complaint is filed and the threat or prison condition causing the physical injury must be real and proximate. Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003) (citing Lewis v. Sullivan, 279 F.3d 526, 529 (7th Cir. 2002) and Heimermann v. Litscher, 337 F.3d 781 (7th Cir. 2003)). In his complaint in this case, petitioner is alleging that another inmate has threatened to kill him and that respondents are refusing to take any action to insure his safety. In particular, he alleges that he received a threat to his life on June 5, 2008 through

an air vent from an inmate in cell B-115, a cell on the lower tier directly below his cell. He alleges that although he has explained to respondents that he does not know the name of his tormentor, respondents refuse to investigate his claim even though it would be a simple matter for them to figure out who occupied Cell B-115 at the time the threat was made. Instead, respondents insist that in order to take any action, petitioner will have to either produce witnesses or provide the name of the inmate. Finally, petitioner says that he will be released into the general population in mid-August, where he believes the inmate formerly housed in cell B-115 is now housed, which means the inmate will have an opportunity to make good on his threat.

I am inclined to accept petitioner's characterization of his present circumstances as constituting a real and not an imagined threat to his safety. Ciarpaglini v. Saini, 352 F.3d at 331(district courts should not apply "complicated set of rules [to discern] what conditions are serious enough" to constitute "serious physical injury" under § 1915(g)). Therefore, petitioner need not prepay the $350 fee before submitting his claim to the court for consideration. It is appropriate for him to present the claim along with a request for leave to proceed in forma pauperis under 28 U.S.C. §§ 1915(a) and (b).

An examination of petitioner's trust fund account statement reveals that petitioner has not supplied a full six-month statement as required by § 1915. Therefore, I cannot determine at this time what amount of an initial partial payment of the filing fee he owes.

3

In particular, petitioner has submitted a "canteen statement" for one day in July 2008, showing a zero balance in his regular and release accounts. In addition, he has filed a statement beginning June 2, 2008 and ending June 23, 2008, showing a deposit to his account in the amount of $.80, which was taken promptly to pay debts he owes for filing other lawsuits.

Petitioner's complaint was submitted on August 4, 2008. His trust fund account statement should cover the period beginning approximately February 1, 2008 and ending approximately August 1, 2008. I am aware from other actions petitioner has filed in this court that before he was housed in the Waupun Correctional Institution, he was confined at the Columbia Correctional Institution. When a prisoner is incarcerated at one or more institutions during the six-month period immediately preceding the filing of his lawsuit, he is required under 28 U.S.C. § 1915(a)(2) to obtain a trust fund account statement "from the appropriate official of each prison at which [he] is or was confined" during the relevant period. Therefore, petitioner may have to write to the Columbia Correctional Institution to request a certified copy of his trust fund account statement for whatever portion of the past six months he might have been confined there. Also, he will have to obtain and submit to this court a complete statement for whatever portion of the past six months he has been confined at the Waupun Correctional Institution that he has not already produced for the court.

4

Petitioner may believe he does not have the means to pay an initial partial payment because his current balance is zero. However, the Court of Appeals for the Seventh Circuit has ruled that a petitioner's immediate lack of income is not sufficient by itself to allow district courts to conclude that he lacks the means to pay the initial partial payment pursuant to 28 U.S.C. § 1915(b)(4). In Newlin v. Helman, 123 F.3d at 435, the court of appeals stated,

> [I]t is not enough that the prisoner lack assets on the date he files. If that were so, then a prisoner could squander his trust account and avoid the fee. Section 1915(b)(4) comes into play only when the prisoner has no assets and no means by which to pay the initial partial filing fee. A prisoner with periodic income has "means" even when he lacks "assets."

In measuring periodic income, § 1915 ordinarily requires courts to look backward in time rather than forward. In other words, in determining whether a prisoner has the means to pay, the court cannot consider representations the prisoner makes about his future income or lack of it. Rather, the court must look at the prisoner's income from the previous six months. 28 U.S.C. § 1915(a)(2).

In this case, petitioner had at least one deposit to his account, an $.80 deposit on June 18, 2008. Even if petitioner had produced a full six-month trust fund account statement showing that this was the only deposit to his account over the past six months, petitioner would have to pay an initial partial payment in the amount of $.02. In the ordinary case, if the prisoner is unable to pay the amount assessed because of his current

5

zero balance, he must wait until his trust fund account statement shows no income for a full six-month period before the court can find him eligible to proceed under § 1915(b)(4).

This, however, is no ordinary case. It makes no sense to hold on the one hand that petitioner's complaint alleges facts from which an inference may be drawn that he faces a real and proximate threat of danger, but to rule on the other hand that the case cannot move forward for up to six months. Petitioner's allegations, taken as true as they are required to be, mandate a swifter response from the court. After all, as the court of appeals has acknowledged § 1915(g) is just "a simple statutory provision governing when a prisoner must pay the filing fee for his claim." Ciarpaglini, 352 F.3d at 331. Section 1915(g) requires full payment in advance. The remainder of § 1915 permits payments in installments, beginning with an initial partial payment. Therefore, although I am requiring petitioner to submit the required trust fund account statement and pay any amount he is assessed subsequently, with the remainder due in monthly installments later, I will proceed to screen the merits of his case under § 1915(e)(2) now, without waiting for petitioner to attend to the details of proceeding in forma pauperis.

After all this, the substance of petitioner's claim is relatively simple. Prison officials have a duty under the Eighth Amendment to protect prisoners from assaults by other prisoners because "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Farmer v. Brennan, 511 U.S.

825, 834, (1994) (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)). Once an official becomes aware of a substantial risk that a prisoner will be seriously harmed, the official must take reasonable measures to prevent the harm from occurring. <u>Id.</u>.

In this case, petitioner alleges that he is a "homosexual transvestite," that another prisoner has threatened to kill him because he is gay and that he and the other prisoner are likely to be housed in the same part of the prison in the near future. Further, he told each of the respondents about the threat but they have refused to investigate the situation. This is sufficient to state a claim under the Eighth Amendment. <u>E.g.</u>, <u>Young v. Selk</u> 508 F.3d 868, 874 (8th Cir. 2007) ("in some circumstances, the knowledge of threats [by one prisoner to another] will support . . . a finding" of deliberate indifference); <u>Rodriguez v. Secretary For The Dept. Of Corrections</u>, 508 F.3d 611 (11th Cir. 2007) (concluding that summary judgment was not appropriate on Eighth Amendment claim when plaintiff had informed prison officials of death threat by unnamed prisoners before assault occurred).

It appears that respondents have refused to take action on the ground that petitioner has not provided more specific information, such as the other prisoner's name. However, petitioner informed respondents that he did not know the other prisoner's name, only his cell number, which would be enough to allow them to identify the prisoner. In any event the Court of Appeals for the Seventh Circuit has held that detailed information is not necessarily required to trigger a duty to investigate: "[J]ust because [a prisoner does] not

7

volunteer detailed information does not mean that [a prison official is] not made aware of a serious risk. Indeed, a jury could well find that the vague nature of [a] complaint [makes] it even more incumbent on [an official] to investigate further." Velez v. Johnson, 395 F.3d 732, 736 (7th Cir. 2005). In other words, once officials are aware of a threat, they may not simply bury their heads in the sand and refuse to look into the matter. Accordingly, I will allow petitioner to proceed on a claim that respondents are failing to protect him from a risk of harm in violation of the Eighth Amendment.

Because petitioner is alleging that he is in imminent danger, I construe his complaint as including a request for preliminary injunctive relief. I will schedule a hearing to determine whether such relief is appropriate as soon as respondents file an answer to the complaint.

At the evidentiary hearing, it will be petitioner's burden to prove that he has a reasonable probability of proving at trial his claim that he faces an immediate threat of harm to his safety and that he will be irreparably harmed if an injunction does not issue. Pelfresne v. Village of Williams Bay, 865 F.2d 877, 883 (7th Cir. 1989). If petitioner makes both of these showings, the court will allow the parties to introduce evidence on the questions whether the threatened injury plaintiff faces outweighs the threatened harm an injunction may inflict on respondents and whether the granting of a preliminary injunction will disserve the public interest.

I have attached to this order the court's procedures for obtaining a preliminary

8

injunction. Under these procedures, petitioner must file with the court and serve on respondents the evidence supporting his claim. He should submit his proposed findings of fact and any underlying evidence he has no later than September 8, 2008. Respondents may have until the day their answer is due to file a response.

One more matter requires short discussion. Petitioner may believe that he will be unable to pay whatever initial partial payment he may be assessed once he submits the necessary statements because the prison is taking 100% of new deposits into his trust fund account. However, the Court of Appeals for the Seventh Circuit has held that when a prisoner owes an initial partial payment for filing a complaint or a notice of appeal and he is receiving periodic income in his prison account, prison officials must collect the payment off the top of the next deposit to the account. <u>Walker v. O'Brien</u>, 216 F.3d 626, 628 (7th Cir. 2000). This is true even when the prisoner owes payments on other obligations. Therefore, petitioner has no reason to fear that he will be unable to pay any amount assessed because he owes other obligations.

ORDER

IT IS ORDERED that

- Petitioner's request for permission to apply for <u>in forma pauperis</u> status is

9

GRANTED. Petitioner may proceed on a claim that respondents are violating his Eighth Amendment rights by failing to protect him from a risk of serious harm.

- Petitioner may have until September 8, 2008, in which to file a brief, proposed findings of fact and evidentiary materials in support of his motion for a preliminary injunction. Respondents may have until the date their answer is due to file a response,

- Petitioner is to submit no later than September 26, 2008, trust fund account statements covering the six-month period beginning approximately February 1, 2008 and ending approximately August 1, 2008, obtained from whatever institutions in which he may have been confined during this period.

- Once petitioner submits the required trust fund account statements, the court will assess him an initial partial payment, which he is to pay from the next deposit to his account. Petitioner must thereafter pay the balance of the $350 fee for filing this case in monthly installments.

- For the remainder of this lawsuit, petitioner must send respondents a copy of every paper or document that he files with the court. Once petitioner has learned what lawyer will be representing respondents, he should serve the lawyer directly rather than respondents. The court will disregard any documents submitted by petitioner unless petitioner shows on the court's copy that he has sent a copy to respondent or

to respondent's attorney.

- Petitioner should keep a copy of all documents for his own files. If petitioner does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

- The clerk of court is requested to insure that the court's financial records reflect petitioner's obligation to pay the filing fee in this case.

- Pursuant to an informal service agreement between the Attorney General and this court, copies of petitioner's complaint and this order are being sent today to the Attorney General for service on the state respondents. Although respondents normally have 40 days under this agreement to file an answer, in light of the urgency of petitioner's allegations, I would expect that respondents will make every effort to file their answer and response to petitioner's motion for a preliminary injunction in advance of that deadline.

Entered this 11th day of August, 2008.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge

11